**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEWPORT CAPITAL GROUP, LLC,<br><br>      Plaintiff,<br><br>   v.<br><br>JEFFREY LOEHWING, et al.,<br><br>      Defendants. | CIVIL ACTION NO. 11-2755 (MLC)<br><br>**O P I N I O N** |

   **THE DEFENDANT** Jeffrey Loehwing moves for reconsideration of the Court's March 28, 2013 Order and Judgment.  (Dkt. entry no. 75, Notice of Recons. Mot.)  The Court has considered the papers submitted on the Reconsideration Motion without oral argument, pursuant to Local Civil Rule 78.1(b).

   **THE PLAINTIFF**, Newport Capital Group, LLC ("Newport"), brings this action against, among others, Loehwing.  (See dkt. entry no. 40, Am. Compl.)  In Count II of the Amended Complaint ("Count II") Newport seeks damages from Loehwing for the alleged breach of a "Confidentiality, Non-Disclosure and Non-Solicitation Agreement" ("Agreement") that Loehwing executed while employed by Newport.  (See generally id. at Count II.)  The Agreement, as described more fully in the Court's March 28, 2013 Memorandum Opinion, purportedly prohibits Loehwing from soliciting business from Newport's clients and prospective clients ("Non-Solicitation Covenant").

**LOEHWING** earlier moved for summary judgment in his favor and against Newport on Count II, insofar as that count concerned the application of the Non-Solicitation Covenant to Newport's prospective clients. (See dkt. entry no. 64-3, Loehwing Summ. J. Br.) He argued that the Non-Solicitation Covenant, as applied to Newport's prospective clients, was overbroad and unenforceable under New Jersey law. (See, e.g., id. at 9-17.)

**NEWPORT** opposed the Summary Judgment Motion and cross-moved for summary judgment in its favor and against Loehwing on Count II. (See dkt. entry no. 67-3, Br. in Supp. of Cross Mot. ("Br. in Supp. of Cross Mot.").) Newport argued that the Non-Solicitation Covenant was valid and enforceable as applied to both its clients and prospective clients. (See id. at 20-29.)

**LOEHWING** opposed the Cross Motion but offered scant argument in support of that opposition. (See dkt. entry no. 72, Reply Br. on Summ. J. Mot. & Opp'n to Cross Mot. ("Opp'n to Cross Mot.") at 7-10.) The bulk of Loehwing's argument concerned Newport's liability under Count III of the amended complaint, which was not the subject of either the Motion or Cross Motion. (See id. at 8-9, 9 n.2.) Newport mentioned such liability in passing, in one sentence in the Cross Motion. (See generally Br. in Supp. of Cross Mot. at 28.) However, it was not the subject of the Cross Motion,

was not properly before the Court, and was not considered by the Court when resolving either the Motion or Cross Motion.

**LOEHWING** relegated his arguments on the merits of the Cross Motion, insofar as the Cross Motion concerned application of the Non-Solicitation Covenant to Newport's clients, to two footnotes. He stated:

> Loehwing does not argue that non-solicitation covenants related to <u>actual</u> as opposed to <u>prospective</u> customers are void.  However, Newport cannot establish that Loehwing solicited away any <u>actual</u> Newport customers either prior to or subsequent to his termination. Newport never provided any services to Immaculata University or Tower Insurance Group during Loehwing's employment.  Tower and Immaculata were never clients of Newport.  Ursinus had a relationship with Loehwing before he joined Newport.  In 2009, while Loehwing was employed by Newport, Ursinus paid Newport a one time $10,000 fee for a vendor assessment project.  That was the extent of Newport's involvement with Ursinus and Ursinus was not an active and paying client on September 24, 2010, when Loehwing left Newport and joined CAPTRUST.

(Opp'n to Cross Mot. at 9 n.3 (citations omitted) (emphasis in original).)  He also stated that:

> it cannot be credibly disputed that Loehwing formed a relationship with Ursinus prior to joining Newport. Under New Jersey law, what Loehwing brought to his employer he should be able to take away.  His relationship with Ursinus was not bought and paid for but merely rented during the period of employment.

(<u>Id.</u> at 8 n.2. (citations omitted) (internal quotation marks omitted).)

3

**THE COURT**, on March 28, 2013, filed both a Memorandum Opinion and a separate Order and Judgment.  The Memorandum Opinion set forth, inter alia, the Court's: (1) finding as a matter of undisputed fact that Ursinus College ("Ursinus") was properly characterized as one of Newport's clients, rather than as one of Newport's prospective clients; and (2) conclusion that the Non-Solicitation Covenant was valid and enforceable as applied to Newport's clients, including Ursinus.  (See dkt. entry no. 73, 3-28-13 Mem. Op. at 12-13, 16-17.)  When setting forth the conclusion regarding the applicability of the Non-Solicitation Covenant to Newport's clients, the Court explained:

> Loehwing does not dispute that the Court should enter judgment against him and in Newport's favor on Count II, insofar as that count concerns Newport's clients.  He merely argues that Ursinus was not and should not now be characterized as a Newport client.
> The Court has already addressed Loehwing's argument, and found that Ursinus is properly characterized as a Newport client.  The Court will not further address it here.  Because Loehwing does not otherwise dispute that Newport is entitled to relief, the Court will enter judgment on Count II, insofar as that Count concerns Newport's clients, in Newport's favor and against Loehwing.

(Id. at 16-17 (citations omitted).)

**LOEHWING**, as noted above, now moves for reconsideration of the 3-28-13 Order and Judgment insofar as the Court there concluded that the Non-Solicitation Covenant was valid and enforceable as applied to Ursinus.  (See dkt. entry no. 75-1, Br. in Supp. of

4

Recons. Mot. at 5-15.)[1] He raises several arguments in support of the Reconsideration Motion. These arguments were available for but not presented in the opposition to the Cross Motion. (See id.; compare id., with Opp'n to Cross Mot. at 7-10.) Specifically, Loehwing argues that the Court: (1) erroneously interpreted the Non-Solicitation Covenant (see Br. in Support of Recons. Mot. at 6-8, 13-15); (2) erroneously applied the Non-Solicitation Covenant to Ursinus (see id. at 6-7, 10-13); and (3) failed to assess whether Newport met its burden under Federal Rule of Civil Procedure 56 when granting judgment in Newport's favor (see id at 8-10).

**IT IS** "well settled that a motion for reconsideration . . . is 'an extremely limited procedural vehicle.'" Tehan v. Disab. Mgmt. Servs., Inc., 111 F.Supp.2d 542, 549 (D.N.J. 2000) (citation omitted). The district court, which enjoys the discretion to grant or deny motions for reconsideration, grants such motions very sparingly. See Caver v. City of Trenton, 420 F.3d 243, 258 (3d Cir. 2005); Cataldo v. Moses, 361 F.Supp.2d 420, 433 (D.N.J. 2004). A movant seeking reconsideration must show: (1) an intervening change in controlling law; (2) the availability of new evidence that was previously unavailable; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. See, e.g.,

---

[1] The Reconsideration Motion does not challenge the Court's rulings that: (1) Ursinus is one of Newport's clients; or (2) the Non-Solicitation Covenant is enforceable as applied to other Newport clients.

Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

**A MOVANT** seeking reconsideration may not "relitigate old matters" or "raise argument or present evidence that could have been raised prior to the entry of judgment." Boretsky v. Governor of N.J., 433 Fed.Appx. 73, 78 (3d Cir. 2011) (quoting Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009)); Dunkley v. Mellon Investor Servs., 378 Fed.Appx. 169, 172 (3d Cir. 2010) (same). "This prohibition includes new arguments that were previously available, but not pressed." Wilchombe, 555 F.3d at 957 (citation omitted) (internal quotation marks omitted); see also Summerfield v. Equifax Info. Servs. LLC, 264 F.R.D. 133, 145 (D.N.J. 2009) ("A motion for reconsideration will [] fail if the moving party raises argument[s] . . . that could have been raised . . . before the original decision was reached.")

**LOEHWING**, as noted above, now relies on arguments that he could have but chose not to present in opposition to the Cross Motion. In part, he challenges this Court's interpretation and application of the Non-Solicitation Covenant. (See Br. in Supp. of Recons. Mot. at 6-8, 10-15.) Because Loehwing could but did not present those arguments to the Court in opposition to the Cross Motion, the Court need not consider them now. See Wilchombe, 555 F.3d at 957; Summerfield, 264 F.R.D. at 145.

6

**THE COURT** finds, however, that Loehwing's third argument has merit; the 3-28-13 Memorandum Opinion does not expressly hold that Newport met its burden of proving that the Non-Solicitation Covenant applies to Ursinus.  For that reason, the Court will grant the motion for reconsideration.  But even upon reconsideration, the Court will not alter the 3-28-13 Order and Judgment.

**THE COURT** earlier found (and Loehwing does not now dispute, for purposes of the Reconsideration Motion) that Ursinus is properly characterized as Newport's client.  (See 3-28-13 Mem. Op. at 12-13.)  The Non-Solicitation Covenant unambiguously states that Loehwing shall not "solicit to render, nor render . . . for the benefit of any person or entity other than [Newport] . . . business or financial services" to Newport's clients.  (See id. at 5 (quoting Non Solicitation Covenant).)  The Court notes the disjunctive nature of the Non-Solicitation Covenant's prohibition: it prohibits Loehwing from both soliciting to render or actually rendering business or financial services to Newport's clients. (See id.)  Because the undisputed facts show that Loehwing actually rendered business or financial services to Ursinus after leaving Newport's employ, he has breached the Non-Solicitation Covenant with respect to that client.[2]

---

[2] Notably, Loehwing did not argue on either the Motion or Cross Motion, and does not argue upon the Reconsideration Motion, that he has not rendered business or financial services to Ursinus.

7

**LOEHWING** argues that the Non-Solicitation Covenant does not bar him from rendering services to Newport's clients where he has not solicited to render services to such clients.  (See, e.g., Br. in Supp. of Recons. Mot. at 6-8, 13-15.)  He argues that Ursinus pursued him after he left Newport's employ.  (See id.; see also dkt. entry no. 20-23, 1-27-11 Letter from Ursinus ("[W]e initiated the contact with Mr. Loehwing as we were anxious to continue our business relationship with him, irrespective of who his employer might be").)  To support this argument, he points to the "Transition Compensation" Covenant of the Agreement, which states, inter alia, that:

> it is not in [Loehwing's] or [Newport's] interest to have a client of [Newport] discontinue or reduce its relationship with [Newport] because of the termination of [Loehwing's] employment/association with [Newport], and that [Loehwing] then be precluded by the terms of [the Non-Solicitation Covenant] from continuing a relationship with such client, since the discontinuation in such event would result in a financial loss to both [Newport] and [Loehwing].

(Agreement at ¶ 7, Transition Compensation Covenant.)

**THE COURT** has reviewed the Transition Compensation Covenant and considered Loehwing's argument.  The Court now concludes that that Covenant simply recognizes the likelihood that Loehwing will maintain relationships with and render services to some Newport clients after leaving Newport's employ, and provides a calculation

for liquidated damages relating to such actions.[3]  It does not abrogate or otherwise invalidate the restrictions imposed by the Non-Solicitation Covenant.  Indeed, such a liquidated damages calculation would be unnecessary unless the actions contemplated by the Transition Compensation Covenant violated the Non-Solicitation Covenant.

 **THE COURT**, for good cause appearing, will enter a separate order, granting the Reconsideration Motion but nonetheless adhering to the 3-28-13 Order and Judgment.

            s/ Mary L. Cooper
            **MARY L. COOPER**
            United States District Judge

Date:  April 19, 2013

---

[3] It specifically recognizes that certain clients, like Ursinus, maintain relationships with individuals rather than entities.  (See id.; see also 1-27-11 Letter from Ursinus.)